We have five cases on the calendar this morning, three patent cases and two cases from the Court of Appeals for Veterans Claims. The latter are being submitted on the briefs and will not be argued. So our first case is United Video Properties v. Federal v. Amazon, 2013-1396, Mr. Lemley. Thank you, Your Honor, and may it please the Court. The District Court in this case construed over 20 terms and five patents. On appeal, Roe v. Challenges the construction of only two terms. In both cases, the District Court made the same error. It ignored the literal language of the claims and imported limitations into those claims based on what the specification described rather than what the claims cover. With your permission, I'd like to begin with Interactive Program Guide in the 690 patent. The District Court construed the term Interactive Program Guide as, quote, and then in reconsideration went on to add another requirement that the guides must be forward-looking, covering only scheduled television programming. That's what the specification would seem to suggest. Well, Your Honor, I think... Talk about being scheduled and not being forward-looking. The specification certainly does include as examples a scheduled television program, but I think the specification also makes it clear that that's just an example and that, in fact, if Figure 2, which does give a traditional time and channel grid, is described as, quote, illustrative only, other program guide display screens are generated for ordering pay programming. The specification in the very first column says, Interactive Program Guides allow users to view television program listings in different display formats. For example, a user may desire to view a channel ordered list. Alternatively, the user may desire to view program listings organized by time, by theme, movies, sports, etc., or by title, alphabetically ordered. So I think the first reason to reject the District Court's construction is the specification, while it does clearly contemplate time and channel information as a possible implementation, is not limited to that time and channel information. And, indeed, the specification distinguishes scheduled television programming from pay programming as two different types of things to be depicted in a guide. But in 1997, wasn't it true that one of ordinary skill in the arts would understand an interactive program guide to permit users to scroll through television program listings and starting times? Your Honor, I think that that would be understood as one possible interpretation, but not as the only one. So that's how I understand the column one of your patent. It says, this is what interactive program guides do. They permit you to do this. They also permit you to buy some pay-per-view show. But at the same time, now there's new kinds of pay packages that are offered by cable and satellite providers. And our invention is to permit you to use that interactive program guide to not only scroll through program listings and buy a pay-per-view program, but also to buy a whole package. I think that's correct, Your Honor. And precisely for that reason, the District Court's requirement that you must display channel and time information and that it must be forward-looking for programs that have not yet been displayed ignores or misses those additional implementations. But I guess what I understand your argument to be is that an interactive program guide, and now as you've described in your patent, can be an either-or situation. It can be either something that just does program listings and buy a television program, perhaps. But it could also just exclusively be a guide where you're only buying paid programs. That's correct, Your Honor. And that's where I'm trying to figure out where in your patent does it say that. Certainly, Your Honor. So the patent never uses the term video-on-demand, which is, I think, what is primarily at issue here. But a number of indications in the patent indicate that you don't need specific pre-programmed time or channel information. Figure 7 and 8, for instance, talk about buying a package of all Olympic swimming events. When, in fact, as we're about to see in Sochi, the times for those events are not necessarily set in stone. They're not pre-scheduled. So if I buy a set of all Olympic swimming events, as in this example, I'm buying some future programming that will be displayed regardless of what channel it ends up appearing on, regardless of what time it happens to appear. The idea is I buy the whole package. Sounds future to me. Well, Your Honor, obviously I'm going to watch shows that I have not yet watched. The question, I think, is whether, as the district court required, those shows must be scheduled to first appear at a later time, or whether the fact that I can choose to watch them later is a requirement. Notable in this regard, I think, Your Honor, is Figure 6, which is on the record at 242. Figure 6 is a flowchart for selecting programs for purchase. And if you follow the flowchart down to determine whether there's a purchasable event, in Element 90 we determine whether it's part of a single package or whether it can be purchased individually. If it is not part of a package, we move to the right and we display starting time, channel, etc. That's the conventional television programming that Amazon refers to. But if it is part of a package and is going to be purchased only as a package rather than individually, then we move down the flowchart, we display the contents of the package and the price, we display the time window in which I might be free to order it, but we say nothing about displaying channel and time information, as the district court required. I guess the question I have, though, for this flowchart is, your flowchart contemplates, I guess, both embodiments. There are going to be times where you're just buying a package and maybe you don't have to worry about the start times, but the interactive program guide as such also lets you display starting times and the names of the programs and the channels and things like that. I think that's right, Your Honor. And the conclusion I draw from that is that time and channel information is not a necessary component of an interactive program guide. It might well, in fact, appear. Many of the embodiments will have time and channel information, but it's not a necessary component. The interpretation that Amazon offers for this is, well, it's okay that the screens don't have the time and channel information as long as somewhere in other applications there's time and channel information. That's a very odd construction of a patent. That says something is a program guide if but only if other parts of the guide Mr. Lemley, you're saying that we should be understanding interactive program guide, that device, that physical thing, whatever it is, as morphing back and forth. Sometimes it's something where we should just re-understand it to be something that has nothing to do with displaying times and channels and program listings, and then other times, depending on how it's used, we now will re-understand the term. With respect, Your Honor, I think actually that's exactly what Amazon is arguing and that we are opposing. What we are saying is a program guide is a way to find the television programming. You could find that television programming in various ways. One way to do it is by looking up time and channel information, and that's a fairly conventional television guide, but other ways to do it are contemplated in the patent, such as looking it up by subject matter, looking it up by title, etc. Mr. Lemley, I think we've had a good interaction on the interactive claim limitation. Do you want to get to data feed? Sure, certainly, Your Honor. With respect to the term data feed, the district court construed the term data feed as meaning an updatable transmission of data sent by a television programming provider over television signals, and the claim to data feed is not transmitted over the Internet. But you had a deletion from your claim. Yes, Your Honor. A deletion of Internet delivered. Yes, Your Honor. So you're left with Internet origin, or from the Internet, but not over the Internet. Exactly, Your Honor. And that deletion, I think, consistent with standard patent law principles, broadened the scope of the claim. Yes, but you deleted something specific in the interpretation of the claim. Therefore, to not include that's what you deleted is a very sound point also. Well, Your Honor, I think for prosecution disclaimer to exist, several things have to happen. The first thing that has to happen is we have to have affirmatively disclaimed scope, and I don't think that that's true here. By removing the Internet delivered data limitation altogether, we broadened the claims. We didn't narrow them. And it's well-established law in this court that if you're broadening the claims, you can't be disclaiming a matter altogether. I also think that the evidence that Amazon relies upon here to suggest that the examiner thought we were affirmatively disclaiming the Internet doesn't suffice. First, it's worth noting that this court suggested in Inovapeer v. Safari Water, it's the applicant's statements, not the examiner's statements, who must give up or disclaim subject matter. Now, I don't think the examiner actually said we gave up the Internet. What the examiner said is you haven't shown that the specification requires the Internet. The applicant submitted the alternative claims. Absolutely, Your Honor. We altered the claims to eliminate the Internet delivered limitation. We did not say in doing so that we were giving up Internet delivery of data. Quite the contrary. And here I would note two points. Doesn't this speak for itself? Your Honor, I think it doesn't. So what this court has said is that an applicant's silence in the face of an examiner's interpretation is not sufficient for prosecution history disclaimer. That's for reasons for allowance though, right? That's not for when you're responding to an office action. No, Your Honor. Were you required to amend the claim to overcome the rejection? Well, I think it is in fact both, Your Honor. So in the SuperGuide case, for instance, the patentees didn't argue during prosecution that regularly received television signal also included digital technology. The court says that doesn't matter because the absence of such an argument does not necessarily indicate a clear and deliberate disavowal. We can draw no inference from what the patentees did not argue. That opinion though also recognized that the patent in that case contemplated both analog and digital signals though. There is a column in the opinion that talks about that. So that's correct. I think it's worth noting here though, Your Honor, that far from acquiescing to an idea that we were giving up Internet delivered data or what the applicant said was quite the contrary. What we said was various types of non-Internet delivery means are only examples of such ways of delivery. We pointed to the specification as saying that those of skill in the art will understand that numerous other transmission schemes can be used to transmit that data scheme. And I think it's also worth noting that the patent itself talks about a distributed application in a broadband network architecture. What is the innovation here? The innovation here has to do with taking information supplemental to a TV program from the Internet and feeding it into the user alongside the television program. So while I'm watching a sporting event, for instance, I could get a feed of commentary or data, other sports scores or sports history that's delivered to me. What is the remote facility in the claim? The remote facility in the claim is a central server that sort of collects that information and processes it and sends it to them. And then the claim says it's now the remote facility, that central server that's receiving the data from the Internet. That's the amendment into the claim. And there was the deletion that the Internet delivery of data was going directly to the user. You deleted that and then you rerouted that Internet data delivery over to the remote facility, which is not the user. It's some central server. So, Your Honor, the delivery, in fact, I think now is entirely agnostic as a result of the change in the claim. So what the original claim said, we're delivering this data via the Internet. The examiner said the specification doesn't require Internet. I don't see support for that. So we changed the claims to remove any limitation as to how it is delivered and just to say we gather the information in the first place from the Internet. We package that together with the television signal into a data feed and then the user receives that data feed. I think by removing any requirement as to how the data feed is delivered to the user, we've pretty clearly broadened the claim. So that if we imagine, for instance, we had originally a claim to a red car and we changed that claim to just, say, a car, I don't think the proper interpretation of that claim is any car except a red one. By broadening the claim, we haven't given up ground. Quite the contrary. You wanted to save some time. I would, Your Honor. Thank you. We'll give you three minutes. Thank you. Mr. Garr. Thank you, Judge Lurie, and may it please the Court. I'd like to begin with the data feed term and then I'll move to interactive program guide. With respect to data feed, I think the only way one can interpret the prosecution in history in this case is to find that the applicant excluded Internet-delivered data from the claim in order to secure approval of that claim. How about the point of removing a limitation broadens the claim? I think the problem with that point is they didn't just remove Internet-delivered data. They replaced it with the term data feed, which the examiner had made clear did not include the delivery of Internet data, and that's at pages 1002 and 1003 of the joint appendix. So you have removal of Internet-delivered data and replacing it with the very term that the examiner had defined not to include Internet-delivered data. And then the third aspect of this, which destroys any argument on this front, is the very change that Judge Chen referred to, which is at the very time that they eliminated Internet-delivered data and replaced it with data feed, they also made clear that it was the remote facility that received the Internet data and they did not challenge the examiner's conclusion, and this is at page 1003 of the joint appendix, that the receiver, i.e. the user or set-top box, could not receive Internet data. The only way to make sense of that claim is to conclude that they disavowed, by applicants' own actions, the amendments, any construction of the term that would include Internet-delivered data. We have to make some inferences, though, to get there, right? We're not working with the more classic form of prosecution disclaimer where it's the applicant that's making certain express statements and then we can see and read and evaluate that and understand what the applicant is giving up. Here it's the examiner saying something, the applicant making an amendment, and now we have to, I don't know, do a little math before we reach the conclusion you want us to reach. Sure, and first I would say that the public looks at the prosecution history in its totality. That's clear, and the public function of the prosecution history is critical, as this Court has repeatedly said. Second, I think the applicant did make clear that it was adopting the examiner's interpretation. I don't think there could be any stronger indication of that by the very amendment to the claim, which eliminates the term at issue and replaces it with data feed, which the examiner had defined to exclude Internet-delivered data, and then the separate amendment with respect to remote facility. And then if you look at what the applicant said in doing that, this is on page 1037 of the Joint Appendix, it said that the reason that they were making those amendments was to moot the 112 objection, the very objection that the specification did not disclose Internet-delivered data. They made that crystal clear. So I don't think they could have been clearer, and if you line this case up with cases like Biogen and Plant Genetic, actually the prosecution history is much more compelling here. In the Plant Genetic case, the Court said that the applicant didn't have to use the very term at issue in order to make clear that it was disavowing it. In this case, the applicant eliminated the very term at issue and then used the term data feed, which the examiner had defined to exclude Internet-delivered data. And I think that if this prosecution history doesn't lead to the conclusion that the public is entitled to draw that they excluded the term that they're arguing about here today, then it's hard to concede with any prosecution history that would. And I think, again, going back to the purpose of relying on the prosecution history, it's the public notice function, that the public is entitled to look at this history and use it to interpret and understand the meaning of the claim, and the only conclusion that the public can reach on this record is that the claim does not include Internet-delivered data. If there are no more questions on data feed... What about the specification in column 10 that talks about how there's many different ways to transmit data? And I think... It's not restricted in how the transmission is done. Well, I think the more pertinent part is the examiner's conclusion that the specification did not disclose. In fact, what the examiner said at 1002 in the Joint Appendix was it didn't even mention or hint at Internet delivery service. And so I think, again, that takes you back into the prosecution history of the applicant seeking to resolve the 112 objection and amending the claim to make clear that he was excluding Internet-delivered data. If we didn't think the prosecution disclaimer was really clear enough, then what? Well, our position relies on the prosecution history. I think if you didn't think it was clear enough, then you would be at odds with your precedent in the biogen case and the plant genetic case, and you would be completely reworking the prosecution history as intrinsic evidence of the prosecution's meaning. I guess I was just wondering if you were then thinking there's a written description defect or something like that. We're not arguing written description here today, Your Honor. I think what's critical for the prosecution history is whether the examiner was right or wrong on written description. We think he was, but whether he was right or wrong doesn't matter. What you look at is how they responded to that rejection. And it was at the point that the examiner had twice rejected their argument that the patent did encompass Internet delivery service. They had a choice. They could have appealed the examiner's rejection. They could have refiled. Instead, what they did was they sought to address that rejection, to moot it in their own terms at 137 of the joint appendix by eliminating the very term Internet delivered data and replacing it with data feed, which the examiner had said clearly did not encompass. This is a carryover sentence from 1002 to 1003, Internet delivered data. And again, they amended the claim to make clear that it was a remote facility, i.e., the cable end, that was receiving the Internet data and that it was not the receiver, i.e., the user or set-top box that was receiving it and didn't challenge the examiner's statement on 1003 of the joint appendix that the receiver was actually incapable of receiving the Internet data. So I think, again, the only way that this court can read it or the public can read it is that by their very own actions, the applicant's very own actions here, they excluded Internet delivered data from the scope of the claim. With respect to interactive program guide, we obviously completely agree with you, Judge Lurie, that the specification is all about time and channel information. I was asking the question rather than stating it completely. Well, fair enough. And so let me say that we think the specification does make that clear. With respect to paid programming, I think what's important to recognize is, and the specification makes this clear, too, that it refers to reminders for the paid programming. You're talking about upcoming paid programming, the prize fight or the Olympic event coming up. So I think that that's perfectly consistent with our construction, too. The question is what would a person of skill in the art have understood this term to mean, 1997? And we've cited the technical dictionary definition of that term. They have no definition. This is a 1996 definition at page 1561 of the Joint Appendix, which provides that it refers to electronic program guide, but Rovia has acknowledged in this case at page 1637.03 of the Joint Appendix that electronic program guide and interactive program guide should be interpreted consistently. And what the definition says is that the program guide refers to forthcoming schedule information. But how about Mr. Lemley's point that using the Olympics, there are some things that will have been passed, and he wants to pick those up, and aren't those part of the program? Well, the Olympic example is, if you look at the patent here, the way to get to that information, the figure that Mr. Lemley referred to, figure six, is through figure two of the patent, which has the time information on one axis and channel information on the other. It's going there first to the programming. One clicks on what you want to see, and you find that it's part of the package, and then you're talking about those events. And again, I think that the relevant, the key question here is what would a person with skill in the art have thought that term meant? And he would have thought that it meant forthcoming channel schedule information, which is precisely what one would think today, and precisely what the plain meaning, the dictionary definition, non-technical meaning of those terms would mean. A guide tells you, directs you to go somewhere. A program is an order of upcoming events. And that's why when you go into a restaurant, you sit down, you don't ask for the food guide, you ask for a menu, menu of what's immediately available. Amazon services here, just to put this in context, Amazon is providing content which is made instantly available to the users. You go to their page, you can see what's instantly available. That is a menu. It is at most a catalog of service. It is not a program guide in any sense as that term is understood. Mr. Lemley's argument is that his client invented a new kind of interactive program guide. Everything you're saying is right about prior existing interactive program guides. And then they went ahead and invented a new kind. And then if you look at figures 6 and 7, you see embodiments that don't have any display screens showing an ability to scroll through program listings for different television channels. And so therefore, maybe there's something going on here that's not quite like what everyone had understood before to be an interactive program guide. And I think the problem with that is twofold. One is if you actually go back and look at the patent, the figures that he's referring to, you only get there by going through the time and scheduling information. And I think the pertinent part of the patent that I would direct you to is column 6, line 43 through column 7, line 47 where it explains how those figures work together. And then I think that the second point which ties it together is that, as Your Honor mentioned, what we're talking about here is an interpretation in which time and scheduling forthcoming information is the minimum requirement of an interactive program guide. What the invention tried to claim is additional features adding on top of the time and scheduling forthcoming information. And sure, they can do that, but they can't change the fact that the person with the skill of the art would have understood an interactive program guide in 1997 to at least include time and channel forthcoming information about forthcoming programming. And that's the problem with their interpretation and the district court correctly recognized it. And I think, you know, look at their interpretation of this term and then I think it all falls apart. Their interpretation of interactive program guides is that it's anything that helps you find programming. Well, that would include a Google search. I could put in the name of the programming and find a list of things and even of content. A clearly interactive program guide can't mean that. The only way that makes sense of that in light of the extrinsic evidence of the dictionary definition is that it includes forthcoming information. And Roe v. itself in the Gemstar case, and we've mentioned this is a 1718 of joint appendix, said explicitly a program guide provides viewers with scheduling information for upcoming TV shows. Is it the same patent as this one? I don't believe it's the same patent, Your Honor, but it's the term that we're referring to. And so I think it's evidence of how that term is understood just as the technical dictionary definition is. And I think to that end it's also relevant that the specifications of the 128 and the 268 patent, which the 268 patent is not before this court, but if you look at those specifications they give you further indication of what a person of skill in the art would understand that term to mean. And they make clear that they would understand that term to include scheduling information about forthcoming programs. What, of course, we would all think of when you picked up a paper copy of the television guide and what the person of skill in the art would have thought an interactive program guide meant in 1997, that even though it's electronic, it would still require you to have time and scheduling information because that is the information that would tell you where to go, how to find the program you're looking for. The word was something like computer instead of interactive program guide in the claim. And then computer 20 years ago was something much less than the computer today. Would you be saying the same thing? No, this claim is stuck to computer as it was understood back in the mid-'90s. And look, there's no question that technology can evolve and claims can cover new technology. But I think, as this court said in the MIT v. Abiscus case, the meaning of a claim term, and I don't think my friend actually disputes this, the meaning of the claim term can't change. And so where you have a situation, as you did in the MIT case, that the meaning of the disputed claim term, there it was scanner, there was a technical dictionary definition that gave meaning to that. So that a person of skill in the art would have understood that term, have that meaning. That meaning can't change over time regardless of evolving technology. Here the meaning was interactive program guide includes something that provides information about forthcoming programming, time and schedule information. That meaning cannot change. And in that respect, this case was fundamentally unlike the super guide case where the court wasn't confronted with the situation where it was clear that the technical term had a meaning to a person of skill in the art. And even the patent itself contemplated that it could mean that the television signal issue could have a broader meaning than just analog. Here you have compelling extrinsic evidence that a person of skill in the art would have understood interactive program guide to be just what the district court concluded it was, requiring forthcoming schedule information, time and channel information. That meaning cannot change over time. And that meaning is strongly supported by the ordinary usage of that term, a program guide, something that tells you where to go to find the programming, which would require time and schedule information. The district court properly construed both terms of the patents, and we would ask this court to affirm the district court's decision. Thank you, Mr. Scott. Thank you. Mr. Lemley, are these 17-year patents or 20-year patents? I'm sorry? Are these 17-year patents or 20-year patents? That's the question, Your Honor. When do they expire? One goes back to 1997. I believe one of them was first filed in 1997. The interactive program guide is, I believe, a 20-year patent. The one with data feed, I believe, was filed in 1995 before the changeover. But I will check and make sure. So let me speak briefly to interactive program guide. It's worth noting... Let's give Mr. Lemley three minutes since we asked a lot of questions. Thank you. It's worth noting that I think there are three independent problems with the district court's claim construction, any one of which would require reversal. We've so far focused most of our attention on the first one, the specification. I just want to briefly highlight two others. The second is, what do people of ordinary skill in the art, what would they have thought at the time that these terms might mean or would include? My learning council suggests that we should look at other Roe v. Patents  If you look at those other Roe v. Patents, they tell you that people of skill in the art at the time that this application was filed clearly contemplated a programming guide using video on demand. The Roe v. 643 patent filed less than a year later was entitled Program Guide System with Video on Demand Browsing, suggesting that a program guide was something that could be used to find video on demand browsing. The LaGioia patent filed before ours disclosed a program guide for VOD, that is Video On Demand Programming, that's A1203. Didn't the district court below do a claim construction for electronic television program guide for the 128 patent? Yes, Your Honor, the parties below... Wasn't that an electronic application that provides television program schedule and channel information? Yes, Your Honor, the parties below stipulated that interactive program guide and electronic television program guide should receive the same construction, so the district court construed them the same way. We're not appealing that. No, Your Honor, and for the simple reason that the district court in those patent claims also construed other terms adverse to us so that while we think that construction was wrong, had we appealed it, it wouldn't make any difference. We couldn't oppose the stipulated summary judgment of non-infringement even if we won. So I think those claim definitions are moot. Amazon suggests that there's a waiver argument, but I think frankly that can't be right. The only reason we didn't appeal those is that it wouldn't have mattered. It wouldn't have made a difference if we'd be asking this court as to those patent claims to give an advisory opinion. But I guess your point is that this is a different spec and the district court came to the same wrong conclusion based on a different spec. Exactly right, Your Honor, and I think the case they cite, the Accenture v. Guidewire case, is a specific issue of patentable subject matter where the question was, do system and method claims stand or fall together? I don't think it can be right that you must appeal everything or you lose the right to appeal anything. So with respect to the final point to make, patent law has always allowed later developed technologies to fall within the scope of the claims. What Amazon has done here is to try to define temporal limitations into claims that lack them. To say, in effect, program guides of the type that existed in 1997. Now we think even those guides would have included video on demand, but it's wrong to say that program guide means only the kinds of program guides that could have existed in 1997. Thank you, Your Honor. Thank you, Mr. Lindley. Before you go, I want to note that your reply brief is in violation of the federal rules by being printed on both sides. I assume that was an inadvertence. It certainly was, Your Honor. I do apologize. The case will be taken under review.